ANDREW J. WEYMOUTH, and others, *vs.* ISAAC BEATHAM.

Piscataquis.    Opinion January 11, 1900.

*Logs. Driving. R. S., c. 42, § 6.*

He who undertakes to drive logs intermixed with his own, at the expense of the owner of them, must drive them reasonably clean to their destination before he can recover compensation therefor. *Held;* that the plaintiff did not do this, and therefore he cannot recover.

ON EXCEPTIONS BY PLAINTIFFS.

This was an action on the case, to recover a reasonable compensation from the owner for driving his timber, which became so intermixed with that of the plaintiffs that it could not be conveniently separated, for the purpose of being floated to the place of market or manufacture. The evidence tended to show that defendant's logs were so intermixed with those of the plaintiffs' in Piscataquis River at the mouth of Sebois stream; and that plaintiff

drove said intermixed timber of defendant out of the Piscataquis River into the Penobscot towards the place of market or manufacture.   Evidence was introduced, by the defendant, to show that after said timber was driven out of Piscataquis into the Penobscot, a part of both plaintiffs' and. defendant's timber became intermixed with timber of the East Branch drive, which was at that time being driven in the Penobscot River at and below the mouth of the Piscataquis, and was driven to the place of market or manfacture by the persons or company so driving said East Branch drive, who were paid for such driving by the plaintiffs and defendant severally.

Evidence was also introduced, by defendant and it was admitted by the plaintiff and his witnesses, that a portion of both plaintiffs' and defendant's logs was left by plaintiff along the shores of Penobscot River, and in two large jams in said river between the mouth of the Piscataquis River and the boom or destination of said logs or timber.   Upon the plaintiffs' right to recover a reasonable compensation for so driving the defendant's logs towards the place of market or manufacture the court instructed the jury as follows: " He exercises his option either to take them along or leave them where he pleases.   But, if he decides to take them along, the intermixed logs with his to the place of destination, then he assumes the control and the duty to take them all along with his drive just as much as if he had undertaken by contract to drive them.   He assumes the duty of taking to market or destination all the so intermixed logs.   Something has been said in the argument that the statute does not require that the plaintiff in this case shall have driven the logs to the place of destination, that if he left the logs elsewhere, short of their destination he might recover. Now these logs, as I understand it, were all destined to the same market or some place or home—those of the plaintiffs' and those of the defendant's.   Now the court has said in a case, which has been before it:   " When a log becomes intermixed they may drive that log all the way even though it afterwards clears itself from the mass intermixed.   The plaintiffs have the custody of it and if they drive it at all they must drive it home.   When he

undertakes to drive intermixed logs—having in view the holding liable the owner of those logs, he must make a clean drive and drive home to the place of destination." To which ruling and instructions of the court, after a verdict for the defendant had been returned, the plaintiffs excepted.

*G. W. Howe*, for plaintiffs.

The statute does not require that the plaintiff drive the logs "to" their destination as a pre-requisite to receiving compensation. The statute simply requires that the plaintiff drive them with his "toward" their destination. This the plaintiff did. He drove them also as far as he did his own, into the Penobscot. There the logs of both were to be taken and driven down the Penobscot by another party.

There is nothing in the statute requiring the plaintiff to complete the driving,—to sort out the defendant's logs at the end. The statute is satisfied when the defendant's logs (having become intermixed) are driven any distance "toward" their destination. For such distance the defendant should pay.

When the logs were out of the Piscataquis into the Penobscot, they were no more on the plaintiffs' hands than on the defendant's. He had completed his part of the driving.

*W. H. Powell*, for defendant.

The legislature never intended that a man having a drive of logs in Penobscot river, the destination of which logs was Howland, should drive the logs of other owners that become intermixed with his own, but the destination of which was Penobscot boom, only so far as the destination of his own logs and hold the owners liable. But the intention must have been that if he undertook to drive the logs and hold the owner liable that he should drive them to their destination, and also that he should make a clean drive of the intermixed logs. By section 6 of chapter 42 of the R. S., this is his plain duty, the language of the statute being that he must drive all the timber of the defendant which had become intermixed with his own towards the market or place of manufacture. It would be unnatural and unreasonable to interpret this to mean toward the market or place of manufacture of the plaintiff's logs.

It is the logs of the defendant that the statute refers to when it says that the plaintiff "may drive all timber with which his own is so intermixed to said market or place of manufacture," and the legislature must have meant a market or place of manufacture of the defendant's logs. The plaintiff's contention is that they started all the logs towards their destination and are not obliged to drive them home.

In construing this statute the court has held the clause " towards the market or place of manufacture," as used in the statute, to mean that all the intermixed logs must be driven home. *Bearce* v. *Dudley*, 88 Maine, p. 419.

It was admitted by the plaintiff and his witnesses that a portion of both the plaintiffs' and defendant's logs was left by the plaintiff along the shores of the Penobscot river and in two jams in Penobscot river between the mouth of Piscataquis river and the boom or destination of said logs and timber.

This is not a case where the plaintiffs inadvertently left a few of their own and a few of the defendant's logs because they were hidden away in the grass or bushes. The logs were in large jams and consequently in plain sight. It could not have been an oversight, but it must have been the intention of the plaintiffs to take only such logs as they could conveniently drive. It is hard, serious work breaking big jams of logs and the plaintiffs preferred to let some one else do it, and it appears from the bill of exceptions that the East Branch Driving Company did afterward drive the intermixed logs of the plaintiffs and the defendant to the market, or place of manufacture, and was paid for the same by the plaintiff and defendant severally.

The jury could not have been misled by the statement of the presiding justice as to making a clean drive. He was talking about intermixed logs and his language is "where he undertakes to drive intermixed logs having in view the holding liable the owner of those logs, he must make a clean drive." Make a clean drive of what? There is but one answer to the question : Of intermixed logs, and it is the law as laid down in *Bearce* v. *Dudley*, above cited, that intermixed logs must be driven clean, reasonably

clean. In that case the court say "they could not drive a part of the intermixed logs and scatter the rest along the river, driving only such part as was convenient."

This opinion was concurred in by Chief Justice PETERS and Justices WALTON, FOSTER, WISWELL and STROUT; and in *McGuire* v. *Gilpatrick, Ib.,* page 423, in an opinion by Chief Justice PETERS it is said " the law of this case is stated in *Bearce* v. *Dudley,* ante, page 410, and need not be repeated here."

In *French* v. *Stanley,* 21 Maine, 512 the court say: "If an instruction of a District judge be not perfectly correct, but the finding of the jury upon a view of the whole case as then presented to them was correct, the party against whom such finding was cannot be considered in the language of the statute authorizing exceptions, as a party aggrieved and exceptions in such case would not be sustainable." To the same effect are the following cases : *Bryant* v. *K. & L. Railroad Co.,* 61 Maine, 300 ; *Lord* v. *Kennebunkport,* 61 Maine, 462 ; *Copeland* v. *Copeland,* 28 Maine, 525.

SITTING: PETERS, C. J., HASKELL, WHITEHOUSE, WISWELL, STROUT, SAVAGE, JJ.

HASKELL, J. This is an action to recover compensation for driving defendant's logs that had become intermixed with plaintiffs' logs so that they could not be conveniently separated therefrom. The case comes up on exceptions by plaintiffs. The verdict was for the defendant. The evidence is not reported, and the facts must be taken as stated in the bill of exceptions.

The plaintiffs and defendant were owners of logs in the Piscataquis river, destined for the boom above Bangor in the Penobscot. Their respective logs became intermixed in the Piscataquis at the mouth of the Sebois stream, and were driven by the plaintiffs out of the Piscataquis into the Penobscot. There a part of the intermixed logs became again intermixed with the East Branch drive, and was driven to the boom by those in charge of that drive, to whom the plaintiffs and defendant paid compensation respectively. A part of the remainder of plaintiffs' drive of intermixed logs

was driven to the boom above Bangor, and part of them was left along the shores and in jams in the Penobscot above the boom, and were not driven in by the plaintiffs.

Had the destination of the plaintiffs' logs been the mouth of the Piscataquis, and had they there separated the defendant's logs from their own and turned them into the Penobscot, they would have been entitled to compensation for driving defendant's with their own, for they would have then driven them home, that is, to the destination of their own drive. That is the doctrine of *Bearce* v. *Dudley*, 88 Maine, 410. In that case the plaintiff drove the defendant's logs in a mass with his own down the Androscoggin to Lewiston, the place of destination of plaintiffs' logs, and there separated defendant's logs and turned them adrift down river towards Topsham, the place of their destination, and the plaintiff was allowed pro rata compensation for driving the mass.

In the case at bar, plaintiffs turned the intermixed mass into the Penobscot, where a part became intermixed with the East Branch drive, and with it were driven to the boom. Had the plaintiffs driven the remainder clean to the boom, then all defendant's logs would have been delivered at their destination, and no good reason can be given why defendant should not have contributed to the expense of driving his logs to market by whomsoever incurred it. But this plaintiffs did not do. They left the intermixed mass along the shores and on the rocks of the Penobscot, as suited their own convenience, over a distance of forty miles. The defendant must then either lose his stranded logs or bear the expense of collecting them from shores, coves, rocks and shoals, at a much larger expense, perhaps, than the cost of driving them in the first instance. He who undertakes to drive logs intermixed with his own, at the expense of the owner of them, must drive them clean, reasonably clean. He cannot scatter a part by the way and only drive those logs that may be conveniently driven, perhaps without much expense, and leave the owner to gather those stranded or lose them. It must be remembered that the whole mass of intermixed logs was driven by plaintiffs out of the Piscataquis. They had taken control of the mass, and should have seen to it that they were driven home as a

pre-requisite of compensation therefor. If a part became inter-mixed with another drive, and so were driven in, the defendant could not have been prejudiced thereby. His logs would have been all delivered at their destination, and it would be just to require him to pay for the benefit of the service received.

The whole charge is neither reported nor made a part of the exceptions. It is presumed that appropriate instructions were given relative to the particular facts of the case, except so far as the extract therefrom excepted to show the contrary.

The extract excepted to is this:

" He [a plaintiff] exercises his option either to take them along [the intermixed] logs, or leave them where he pleases. But if he decides to take them along, the intermixed logs, with his to the place of destination, then he assumes the control and the duty of taking them all along with his drive, just as much as if he had undertaken by contract to drive them."

That instruction is correct as a rule of law. Conditions might call for more explicit explanation in its application to the facts of a case, as, for instance, that the intermixing with the East Branch drive, if the intermixed logs were driven in, would not preclude recovery. Such an instruction is presumed to have been given. If not given, it should have been requested. But whether given or not, upon the facts stated in the exceptions the plaintiffs should not recover, for they admit that they neither did, nor did they try to drive the remaining logs reasonably clean, which fact ought to bar their recovery. This would have been so if no logs had become intermixed with the East Branch drive, for the plaintiffs then would have been required to make a reasonably clean drive of the whole mass of logs before recovery.

The remaining extract excepted to is a quotation from *Bearce* v. *Dudley*, and is applicable to the facts, as the destination of both plaintiffs' and defendant's logs was the same boom, and had refer-ence to the scattering of defendant's logs all the way from the Piscataquis to the boom.

*Exceptions overruled.*